******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAUREEN TORLA *v.* STEPHEN TORLA
(AC 35119)
(AC 35120)

Beach, Sheldon and Bear, Js.

*Argued May 27—officially released August 12, 2014*

(Appeal from Superior Court, judicial district of New Haven, McLachlan, J. [dissolution judgment]; Gould, J. [motion to dismiss, order to vacate]; Burke, J. [motions to cite in, to substitute]; Hon. Howard F. Zoarski, judge trial referee [hearing in damages; articulation].)

*Houston Putnam Lowry*, with whom, on the brief, was *Julie A. Morgan*, for the appellant (plaintiff).

*Gerald H. Kahn*, for the appellee (defendant Joan A. Dulski).

*Opinion*

SHELDON, J. These consolidated appeals involve a dispute over the proceeds of a life insurance policy issued to the defendant, Stephen Torla, between his former wife, the plaintiff, Laureen Torla, and his sister, Joan A. Dulski.[1] After Dulski was defaulted for failure to plead in response to the plaintiff's complaint, the trial court conducted a hearing in damages, after which it held, inter alia, that the plaintiff had failed to prove any of her claims against Dulski in relation to that policy, and thus ordered distribution of the remaining proceeds of that policy among Dulski and the Torlas' children. In so doing, the trial court exceeded the scope of its authority in a hearing in damages by failing to treat the allegations of the plaintiff's complaint as proven facts. We thus reverse the judgment of the trial court.

The following facts, as alleged by the plaintiff, and procedural history, are relevant to these appeals. The trial court dissolved the marriage of the plaintiff and the defendant on October 15, 1999, incorporating into the judgment of dissolution the parties' stipulation of that same date. Section 4.2 of the stipulation required the defendant to maintain life insurance in the amount of $130,000 for the benefit of the Torlas' minor children for so long as he was required to pay child support.[2] When the defendant died on December 13, 2010, only one of his children was a minor. At that time, he had two life insurance policies, one with Crown Life Insurance Company (Crown Life) for $100,000, and the other with Sun Life Financial (Sun Life) for $20,000.

Prior to his death, the defendant had given Dulski a durable power of attorney for the management of his financial affairs. By the time of the defendant's death, Dulski had become the named beneficiary of both of his life insurance policies. After the defendant's death, Dulski applied for and received the proceeds of the Sun Life insurance policy, as the plaintiff was initially not aware of the existence of that policy.[3] The plaintiff, however, contested Dulski's claim for the proceeds of the Crown Life policy, and filed a claim for those proceeds herself, arguing that those proceeds were for the benefit of her and the defendant's remaining minor child.

On August 25, 2011, the plaintiff filed, in the dissolution action, an application for an order to show cause against Dulski and Crown Life, alleging that Dulski had improperly transferred ownership of the defendant's Crown Life insurance policy to herself and designated herself as the beneficiary under that policy, with knowledge that the policy was meant to be for the benefit of the minor child pursuant to the dissolution decree. By way of that application, the plaintiff sought, inter alia, to have the court find Dulski in contempt and to enforce

its order requiring the defendant to maintain life insurance for the benefit of the minor child by ordering that Dulski change the beneficiary of the life insurance policy to the child. Dulski moved to dismiss the application, which the court granted, finding that it lacked jurisdiction because a representative of the defendant's estate had not yet been substituted as the defendant in the dissolution action.

The plaintiff then opened an estate for the defendant, and the Naugatuck Probate Court named Attorney Frederick Dlugokecki as administrator of the estate. On December 22, 2011, after the plaintiff moved successfully to substitute Dlugokecki as a party defendant in the dissolution action and to cite in Dulski and Crown Life as additional parties thereto, the trial court vacated its prior order of dismissal.

On March 30, 2012, the trial court transferred the case from the family docket to the civil docket and ordered the plaintiff to "recast" her motion for order to show cause as a civil complaint. The plaintiff subsequently filed a civil complaint, dated April 11, 2012, in compliance with the court's order, claiming therein that Dulski had acted in concert with the defendant in an attempt to reduce his assets to zero, so as to qualify for Medicaid, and to violate the provision of the dissolution decree requiring him to maintain life insurance for the benefit of his minor child. In her various requests for relief, the plaintiff sought, inter alia, a judgment of interpleader directing Crown Life to pay the Crown Life insurance proceeds to the parties' minor child and a court order requiring that a constructive trust be set up for the benefit of the minor child.

On May 8, 2012, Dulski was defaulted in the civil case for failure to plead. Consequently, the case then proceeded to a hearing in damages. On October 2, 2012, the trial court filed its memorandum of decision, which bore both the family docket number and the civil docket number in the caption of the memorandum. Despite the default that had entered against Dulski, the court found that the defendant had named Dulski as beneficiary of his life insurance policies in order both to reimburse her and to thank her for the care she had given to him prior to his death, and that the plaintiff's claims of impropriety against Dulski were not supported by the evidence. The court concluded that the plaintiff had not proven at the hearing in damages that the defendant and/or Dulski had violated the terms of the divorce decree. The court found that there was "no proof . . . that . . . Dulski acted improperly," and "[t]here was no evidence presented . . . that . . . Dulski committed any theft or that she committed a criminal act, and therefore there is no legal basis to support the claims of the plaintiff." On those bases, the court ordered that Dulski, as the named beneficiary of the Crown Life insurance policy, receive the proceeds

from the policy, but that she disburse $20,000 of those proceeds to each of the defendant's three children.

On October 22, 2012, the plaintiff timely filed two appeals, one in the civil case (AC 35119) and the other in the family case (AC 35120), because the trial court had listed both the family docket number and the civil docket number in the caption of its memorandum of decision. This court consolidated the appeals prior to briefing and argument on January 22, 2013.[4]

On appeal, the plaintiff raises several claims of error with the trial court's judgment, but because we agree with her claim that the court exceeded the scope of its authority in a hearing in damages by failing to treat the allegations of the plaintiff's complaint as proven facts, we need not address her remaining claims.

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . Upon default, the plaintiff ordinarily becomes entitled to recover nominal damages. . . . The right to further substantial damages remains to be established by the plaintiff at a hearing in damages. . . . After a default, a defendant may still contest liability. Practice Book §§ 17-34, 17-35 and 17-37 delineate a defendant's right to contest liability in a hearing in damages after default. . . . Unless the defendant provides the plaintiff written notice of any defenses, the defendant is foreclosed from contesting liability. . . . If written notice is furnished to the plaintiff, the defendant may offer evidence contradicting any allegation of the complaint and may challenge the right of the plaintiff to maintain the action or prove any matter of defense. . . . This approximates what the defendant would have been able to do if he had filed an answer and special defenses." (Citations omitted; internal quotation marks omitted.) *Schwartz* v. *Milazzo*, 84 Conn. App. 175, 178–79, 852 A.2d 847, cert. denied, 271 Conn. 942, 861 A.2d 515 (2004). "A party who allows the ten day period from the notice of default to expire without filing a notice of defenses does so at his peril." (Internal quotation marks omitted.) *Percy* v. *Lamar Central Outdoor, LLC*, 147 Conn. App. 815, 823, 83 A.3d 1212, cert. denied, 311 Conn. 932, 87 A.3d 580 (2014).

Here, Dulski was defaulted for failure to plead and thus the material facts alleged by the plaintiff were deemed admitted and the liability of Dulski was conclusively established. Dulski did not file any notice of defense and, in fact, did not appear at the hearing in damages or otherwise make any attempt to contest the plaintiff's allegations. The trial court therefore improperly determined that the plaintiff had failed to prove her claims. That is a burden of which she was relieved upon Dulski's default and failure to file a notice of defense.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] Dulski and Crown Life Insurance Company were cited into this matter in the trial court. Frederick Dlugokecki, administrator of the estate of Stephen Torla, also was substituted as a defendant. Neither Crown Life Insurance Company nor Dlugokecki are parties to these appeals. For convenience, we refer in this opinion to Dulski by name and to Stephen Torla as the defendant.

[2] Although the agreement actually provided that the defendant also maintain life insurance for the plaintiff while he was obligated to pay alimony, his alimony obligation had expired as of August 1, 2004, and that aspect of the life insurance order is thus not relevant to the issues before us.

[3] The plaintiff did not challenge Dulski's receipt of the proceeds of the Sun Life policy.

[4] Although the trial court subsequently filed an articulation of its decision in response to this court's order that it do so, that articulation has no bearing on our resolution of the plaintiff's claim on appeal.